LOUISA W. DOWD ET AL. *vs.* ELIZUR R. ENSIGN ET AL.

First Judicial District, Hartford, October Term, 1896.  ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN AND HAMERSLEY, JS.

In a case reserved for the advice of this court, the facts upon which the
legal or equitable rights of the respective parties depend must be dis-
tinctly found by the trial court.  If not so found they cannot be found
or inferred by this court from the subordinate evidential facts recited
in the finding, but the cause will be remanded for a further and more
explicit finding, if the advice of this court is desired.

[Argued October 8th—decided November 5th, 1896.]

SUIT to restrain the defendants from removing a division
line stone wall, and also for damages, brought to the Court
of Common Pleas in Hartford County and reserved by that
court, *Calhoun, J.*, upon a finding of facts, for the consider-
ation and advice of this court.  *Cause remanded for more
explicit finding.*

The finding is in substance as follows: In 1858, Col. Sam-
uel Colt of Hartford purchased a tract of land in East Hart-
ford, which he owned until his death in 1862.  It then
passed to his widow, Elizabeth H. Colt, as his devisee.  In
1892 she conveyed a part of it to the defendants by a deed
of warranty in ordinary form, which mentioned the wall
hereafter described in these words, following the boundary
and description of the land: "including the ferry landing,
wharf, and the stone wall bounding said land on the north;
and also including that part of the wall which is north of
land of Roger Lang, and which was reserved to the grantor
in a deed from the grantor to said Lang, dated April 27,
1876."  The land above referred to was bounded on the
north by land of one Mrs. Nancy Dowd, which land at her,
the said Mrs. Dowd's death, in 1893, passed to the plaintiffs
as her heirs at law and devisees.  Both parcels of land were
bounded west on the Connecticut River.  The division line
between them was a straight line, and ran nearly east from
said river.  In 1858, Col. Colt established a ferry across said

Dowd et al. *v.* Ensign et al.

river, which was used until 1877, when it was discontinued. The ferry boats landed on the east side of the river, in a narrow bay or slip made by the excavation of the river bank at a point near and south of the division line between the land of said Colt and that of Mrs. Dowd. In the years 1858–9, Col. Colt built, at his own expense and at a cost of about $3,000, a heavy stone wall extending from low-water mark of the river, east to an ash tree. It was 250 feet in length, and constructed of quarried Portland stone. At the river's edge it was about 11 feet in width and 12 to 15 feet high, diminishing in height and width for 130 feet, and from that point to its eastern extremity was, on an average, 3 feet high and wide. Extending from the western end of this wall northward on the river's bank and on land of the said Mrs. Dowd, was a wing-wall about     feet in length; and in the angle made by this wing-wall and the main wall were deposited scow-loads of loose stone, forming a rip-rap. The stone blocks of the river abutment of the main wall and of the wing-wall were joined together by iron clamps, and the whole wall had a heavy stone coping. The main wall referred to was built in its width partly on land of each of said adjoining proprietors, and their common bound line runs nearly through the center of the said wall for its entire length. The wing-wall was built wholly on the land of Mrs. Dowd. The wall, when constructed as described, served and was designed to protect the ferry-slip of Col. Colt from the action of the river, especially in freshets, which otherwise would have filled the slip with earth. It also protected the land of Mrs. Dowd from the usual abrasion by the current of the river which flowed and now flows near the eastern bank at this spot; and it served as a division wall between the parties, and took the place of the former division fence. " It was a substantial structure for the benefit of both parties, and built with the knowledge and assent of Mr. and Mrs. Dowd." No repairs of the wall have been made. The river abutment and wing-wall are somewhat dilapidated ; in one place,     feet from the river, the wall is down for 20 feet, but in its present condition it serves, and is likely to serve

for many years, as a breakwater and a protection to the land of the plaintiffs. The removal of said wall, or so much of it as to destroy or lessen its effect as a breakwater, would expose the said land of the plaintiffs, which is now valuable, to the action of the river current, and would result in a gradual wearing away of the soil by the water. Before the wall was built the river carried away about one rod of land yearly at this place. The defendants, claiming and believing they had the right so to do under said deed from Mrs. Colt, have, since December 2d, 1892, taken down a part of said wall, and have sold some of the stone of which it was built, and propose, unless restrained by injunction, to remove said wall and dispose of the material of which it is composed. The value of the stone sold by the defendants as aforesaid is about $50; but it would cost a large sum to restore the wall torn down by the defendants to its condition at the time of the commencement of the acts of the defendants complained of.

The questions presented by the reservation stated, are: 1. Whether the plaintiffs are entitled to a judgment of injunction. 2. Whether a judgment for damages can be rendered against the defendants for taking down the wall and selling the material; and, if so, what should be the rule of damages.

*Timothy E. Steele* and *John A. Stoughton*, for the plaintiffs.

*William W. Hyde* and *Arthur L. Shipman*, for the defendants.

FENN, J. The finding of the trial court leaves indefinite and undecided the very matters on which the briefs and oral arguments of the respective parties depend.

On the part of the plaintiffs it is contended that the structure in question cannot be treated as an incumbrance existing by license of either party, because if this were so, it lay in the power of the licensor, at any time after the work was completed, to order its removal and to eject the owner of the

wall as a trespasser. It is said, " this evidently was not con-templated, from the very nature of the structure and the purposes it has answered for the period of more than thirty-eight years." If this be true, it was for the trial court to so find as a fact. But it did not, and we cannot. *Brady* v. *Barnes*, 42 Conn. 512; *Staples' Appeal from Probate*, 52 id. 425; *Rockwell's Appeal from Probate*, 54 id. 119; *White* v. *Beckwith*, 62 id. 79, 82.

Again, the defendants urge, *first*, " that the facts as found show abundant evidence to support the defense of title by adverse user;" and *second*, that "if the facts as found do not show an original entry under claim of right, they show an entry and occupation by license." They argue that, in either view, the property in the materials belongs to them.

The court found that the wall "served and was designed to protect the ferry-slip of Col. Colt from the action of the river, especially in freshets, which otherwise would have filled the slip with earth. It also protected the land of Mrs. Dowd." But that it was " designed " for the latter purpose, as for the former, the court does not state.

Again, it is stated that the structure " served as a division wall between the parties, and took the place of the former division fence." But here also, there is no statement or in-dication that what it thus in fact served to do, there was any design or purpose, as a reason of its erection, that it should do.

Finally, it is said : " It was a substantial structure for the benefit of both parties, and built with the knowledge and assent of Mr. and Mrs. Dowd." That it was indeed bene-ficial to both parties, is further clearly evident. That it was so to Mrs. Dowd, because it furnished a breakwater and pro-tection to her land, is certain. But there is nothing here that answers the perhaps vital and pivotal question, in this particular case, namely, whether the assent of Mrs. Dowd to the building of this wall partly upon her land, was based upon any agreement or understanding that such structure, which would serve as a protection and a benefit to her prop-erty while it remained, should so remain permanently, whether

it continued or whether it ceased to benefit him at whose sole expense it was constructed.

· It may be said that it appears from the record that it would have been impossible for the trial court to have made any more definite finding concerning the matter last suggested, since it is stated that "there was no direct evidence to show what, if any, was the agreement or understanding." But we cannot say, nor did the court below consider, that it was essential the evidence should be direct, to justify proper inferences or conclusions of fact.

The question fully discussed by the plaintiffs in their brief, whether the case is one in which an injunction might be granted, appears to us pretty largely to turn upon the further inquiry—which the present finding does not enable us to answer—whether the threatened acts complained of would, as the plaintiffs claim, affect the inheritance and cause irreparable injury, on the assumption that they are entitled to the continuance of the wall and the protection it affords ·to their land ; or whether, as the defendants assert, their only wrongful act would be " a mere stepping upon the soil" to remove materials belonging to them.

That the facts upon which both legal and equitable relief are sought may, under the Practice Act, be presented in the same suit, and by a single count, has not been· questioned, and cannot be. *Trowbridge* v. *True*, 52 Conn. 190.

The case is remanded to the Court of Common Pleas for further hearing, if necessary, and a further and more explicit finding, if the advice of this court is desired.

In this opinion the other judges concurred. · ·